UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No:

GIANFRANCO RONDON,

                                                          CASE NO.: _____

      Plaintiff,
v.

GIANFRANCO NAPOLITANO,
PATRICIA POLEO, JONATHAN LEON,
DORAL NEWSPAPER, LLC, a Florida
Limited liability company d/b/a DORAL NEWS,
and DORAL NEWS TV, INC., a Florida corporation,

      Defendants.
_____/

## COMPLAINT

Plaintiff, GIANFRANCO RONDON, files this Complaint against Defendants, GIANFRANCO NAPOLITANO, PATRICIA POLEO, JONATHAN LEON, DORAL NEWSPAPER, LLC, a Florida limited liability company d/b/a Doral News, and DORAL NEWS TV, INC.

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff is a natural person and citizen of the country of Venezuela  Plaintiff is a businessman with substantial business in Venezuela.  Prior to the actions by Defendants described in this Complaint, Plaintiff enjoyed an excellent business and personal reputation in Venezuela and throughout the World.

2. Defendant, GIANFRANCO NAPOLITANO, is a natural person who resides in Miami-Dade County, Florida. NAPOLITANO is the controlling member of Defendant, DORAL NEWSPAPER, and the controlling shareholder of Defendant, DORAL TV.

3. Defendant, PATRICIA POLEO, is a natural person who resides in Miami-Dade County, Florida. POLEO is employed as a journalist by Defendants, DORAL NEWSPAPER and DORAL TV.

4. Defendant, JONATHAN LEON, is a natural person who resides in Miami-Dade County, Florida. LEON is employed as a journalist by Defendants, DORAL NEWSPAPER and DORAL TV.

5. Defendant, DORAL NEWSPAPER, LLC, is a Florida limited liability company with its principal place of business in Miami-Dade, Florida. Among other things, DORAL NEWSPAPER operates the website www.doralnewsonline.com, and publishes the printed circular "Doral News".

6. Defendant, DORAL TV, INC, is a Florida corporation with its principal place of business in Miami-Dade, Florida. Among other things, DORAL TV operates a television station that is broadcast in South Florida.

7. This Court has original jurisdiction pursuant to 28 U.S.C.A. § 1331, because this lawsuit involves Defendants' violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A § 1961 et seq., for which a civil remedy is available to private parties pursuant to 18 U.S.C.A. §1964.

8. Additionally, pursuant to 28 U.S.C.A. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims made pursuant to Florida law, as these claims are so related to the RICO claim that they form part of the same case.

9. This Court has personal jurisdiction over Defendants pursuant to Florida Statutes Sections 48.193(2) and 48.193(1)(a)(2) because Defendants are all residents of the State of Florida and Defendants engaged in tortious conduct in the State of Florida.

10. Venue is proper within the Southern District of Florida as this is the district in which the Defendants reside, in which Defendants committed their tortious conduct, and in which the Defendants engaged in their scheme to extort Plaintiff in violation of RICO.

## GENERAL ALLEGATIONS

11. Plaintiff is a Venezuelan business man who conducts international transactions exporting U.S. manufactured products to Venezuela

12. Over the course of many years, South Florida has become the epicenter for trade and commerce between the U.S. and Venezuela.

13. Accordingly, Plaintiffs business reputation is directly linked to South Florida and its Venezuelans residents and business men.

### The Venezuelan Community in Doral and The Doral News and Doral TV Publications

14. The community of Doral in Miami-Dade County, is home to a large community of Venezuelan nationals and expatriates who maintain a large and intricate web of business, social and family ties between the Unites States and Venezuela.

15. DORAL NEWSPAPER publishes a printed newspaper known as "The Doral News", which circulates throughout the community of Doral, and in addition publishes an online version of The Doral News at its website found at www.doralnewsonline.com.  The Doral News

and its online version are widely read by the Venezuelan community in South Florida and because of the community's intricate web of business, social and family ties with its homeland, The Doral News and its online version are widely available and read in Venezuela.

16. DORAL TV operates a television station that is broadcast through Miami-Dade via Comcast Cable Channel 84. Among other things, DORAL TV publishes a television program titled "Agarrate" which is hosted by Defendant, POLEO, and which is targeted at an audience of Venezuelans living in South Florida.

17. Prior to the acquisition of a controlling interest by Defendant, NAPOLITANO, DORAL NEWSPAPER and DORAL TV were owned by Carlos Herradez and his wife, Andreina Campis, two Venezuelan expatriates with close ties to the Venezuelan community in South Florida and its concomitant community in the Venezuelan homeland. Prior to the acquisition by NAPOLITANO, Mr. Herradez and Ms. Campis served as editors of The Doral News and the programs broadcast on Doral TV.

18. Prior to the acquisition by NAPOLITANO, the stories published in The Doral News and the programs broadcast on Doral TV focused exclusively on local affairs and reporting on the doings of the municipality of Doral and the surrounding communities.

**The Scheme by Napolitano, Poleo and Leon**

19. Defendant, NAPOLITANO, is a wealthy businessman who recently immigrated to the United States from Venezuela.

20. In or about November 2014, NAPOLITANO, acquired a controlling interest in Defendants, DORAL NEWSPAPER and DORAL TV, by purchasing the shares of Carlos Herradez for a purchase price of $900,000.

21. Shortly thereafter, NAPOLITANO commenced a scheme to use DORAL NEWSPAPER and DORAL TV, and their employees or agents, Defendants, POLEO and LEON, to extort Plaintiff by publishing a series of false and defamatory stories to negatively affect Plaintiff's business unless Plaintiff paid $5,000,000 to stop the stories.

22. In January 2015, Plaintiff was contacted by NAPOLITANO's business associate, Tulio Carpriles Hernandez, to let him know that NAPOLITANO was willing to sell his interest in DORAL NEWSPAPER and DORAL TV to Plaintiff in exchange for 5 Million Dollars.

23. Plaintiff refused to pay the exorbitant demand to purchase NAPOLITANO's interests in DORAL NEWSPAPER and DORAL TV and as a consequence, in or about February and March 2015, Defendants, POLEO and LEON, in furtherance of the scheme, published via DORAL NEWSPAPER and DORAL TV a series of a series of false and defamatory stories concerning Plaintiff.

24. Specifically, Defendants published the following false and defamatory stories:

   A. On or about February 2015, as part of the scheme, Defendant, POLEO, published in the Doral News online version a story-referencing Plaintiff in the title "Authorities in Washington will investigate fortune of presumptive bag man of Diosdado Cabello Rondon in the capacity as his family Gianfranco Rondon." (the "Bag Man Story").[1] The Bag Man Story states unverified facts and false allegations that Rondon has family ties with high ranking

---

[1] The title in the original Spanish language is "Autoridades en Washington investigarán fortunas de presuntos testaferros de Disodado Cabello Rondon en la figura de su familiar Gianfranco Rondon."

political figures in Venezuela whom merely share his common last name, and in addition states that Plaintiff has engaged in criminal acts and claims that Plaintiff is the bag man for a nefarious political actor in Venezuela named Diosdado Cabello Rondon ("Cabello")[2]. The Bag Man Story further alleges that Plaintiff is under investigation by the United States, that Plaintiff's fortune and business success is derived from illegal acts, and that Plaintiff possesses a bank account with close to US$500 Million. In fact, although Plaintiff shares a common last name with Cabello, Plaintiff does not have family nor business ties to Cabello. Moreover, Plaintiff does not have any business dealings with Cabello, and Plaintiff does not have a bank account with close to US$500 Million.

B.  On or about March 2015, in furtherance of the scheme, Defendant, POLEO, posted on her Twitter page, false statements along with a photograph of Plaintiff at a social event in Venezuela (the "March Defamatory Story"). In the March Defamatory Story, Plaintiff is stated to be partying with a Venezuelan political actor named Pedro Carreno, who is the head of the Commission of the Controller, and claims that Plaintiff receives protection from the Commission to hide Plaintiff's "dirty tricks" with the government of Venezuela.

C.  On or about March 2015, in furtherance of the scheme, Defendant, LEON, attached his name to the byline of an article published in Doral News, making false and defamatory statements about Plaintiff (the "Leon Defamatory Story"). The Leon Defamatory Story falsely represents that Rondon is a business "Partner" of Miguel Eduardo Rodriguez Torres

---

[2] Diosdado Cabello Rondon is a Venezuelan politician, President of the National Assembly of Venezuela and active member of the Venezuelan armed forces. He was involved in Hugo Chavez' return to power after the 2002 coup d'état. In 2013, there were at least 17 formal corruption allegations lodged against Cabello in Venezuela's prosecutors office.

("Torres").³ The Leon Defamatory Story further states that "many people confirm" Rondon's role in managing an "immense fortune" belonging to Diosdado Cabello Rondon, who is the President of the National Assembly of Venezuela.  The Leon Defamatory Story states falsely that sources in Washington confirm that the United States authorities are investigating the origins of Plaintiff's wealth and business deals in the United States.  The Leon Defamatory Story concludes by stating falsely that Plaintiff was involved with Torres in the commission of human rights violations and the death of 40 university students at the hands of Venezuelan authorities. The defamatory statements made and published by Defendants are actionable *"per qoud"*, when taken in context and the innuendo suggested.  More specifically, Defendant's statement that Rondon has family ties to Cabello as his "straw man" or "front man", relies on knowledge of extrinsic facts possessed throughout the Venezuelan community – namely that Cabello has a reputation of being a corrupt government official. The statements imply conduct and family/business ties to Cabello, that degrades and injures Plaintiff, his good name, his reputation, his standing in the community, both personally and professionally, and exposes Plaintiff to distrust, hatred, contempt and obloquy causes him to be shunned or avoided by others.

    25.    Contemporaneously with the publication of the defamatory statements, Plaintiff, NAPOLITANO, visited the home of Carlos Herradez and instructed Mr. Herradez to communicate to Plaintiff that the smear campaign and defamatory statements in DORAL NEWSPAPER and DORAL TV would stop if Plaintiff paid NAPOLITANO Five Million Dollars.

    26.    During his visit to Mr. Herradez's home, NAPOLITANO offered Mr. Herradez the sum of One Million Dollars if Mr. Herradez assisted with extorting the Five Million Dollars

---

³ Torres was the minister of the Popular Power for Interior, Justice and Peace of Venezuela until replaced on October 24, 2014.

from Plaintiff.  NAPOLITANO further stated to Mr. Herradez that he would take care of paying POLEO and LEON, but that Plaintiff should also consider giving POLEO a new car.

27. Mr. Herradez informed NAPOLITANO that he refused to participate in the scheme with NAPOLITANO, DORAL NEWSPAPER, DORAL TV, POLEO and LEON. Shortly thereafter, Mr. Herrades received a text message from NAPOLITANO threatening him with "Omerta", a reference to the Mafia code of silence, and stating those who violate Omerta face death.

**Plaintiff's Demand for a Retraction of the Defamatory Statements**

28. On March 16, 2015, pursuant to Florida Statutes Section 770.02, Plaintiff sent to Defendants DORAL NEWSPAPER, POLEO and LEON, a letter notifying these Defendants that they had made defamatory statements about Plaintiff and demanding that the defamatory statements be retracted.

29. As of the filing of this Complaint, neither DORAL NEWSPAPER nor POLEO nor LEON has issued a correction, apology or retraction of the defamatory statements.

30. Plaintiff has retained the undersigned attorneys and is obligated to pay them a reasonable fee plus costs for prosecuting Plaintiff's claims against Defendants.

**COUNT I**
**(Violation of RICO)**

Plaintiff sues Defendants, NAPOLITANO, POLEO, LEON, DORAL NEWSPAPER and DORAL TV, and alleges as follows:

31. Plaintiff re-alleges the allegations of paragraphs 1 through 30 as if fully set forth herein.

32. Defendants' scheme constitutes a pattern of racketeering activity to maintain an enterprise that is engaged in interstate or foreign commerce in violation of 18 U.S.C.A. §1962.

33. Specifically, Defendants' scheme is in violation of the following offenses which are federal crimes or crimes carrying a punishment of greater than one year under Florida law:

    A. Defendants' actions constitute the crime of extortion under Florida law, which prohibits a person from threatening to accuse another of any crime or offense, or from threaten to expose another to disgrace or to expose any secret affecting another, with intent to compel the person so threatened to do an act against his will. *Fla. Stat. §836*.05.

    B. Defendants' actions constitute the crime of wire fraud, which prohibit a scheme for obtaining money or property by means of false or fraudulent pretenses by transmitting or causing to be transmitted by wire, radio or television any writing, signals, pictures or sounds that further the scheme *18 U.S.C.A. §1343*.

    C. In addition, Defendants' actions constitute the crime of Interference with commerce by threats or violence, which prohibit a person from affecting commerce by extortion or threats of violence. *18 U.S.C.A. §1951*.

34. Plaintiff has been injured as a direct and foreseeable consequence of Defendants' scheme in violation of 18 U.S.C.A. §1962.

**WHEREFORE**, Plaintiff demands the entry of a judgment against Defendants for all damages allowed by law, including attorney's fees and costs, and for any further relief this Court deems just and proper.

**COUNT II**
**(Injunction Against All Defendants)**

Plaintiff sues Defendants, NAPOLITANO, POLEO, LEON, DORAL NEWSPAPER and DORAL TV, and alleges as follows:

35. Plaintiff re-alleges the allegations of paragraphs 1 through 30 as if fully set forth herein.

36. Defendant's conduct constitutes criminal extortion under Florida law. . *Fla. Stat. §836*.05. Defendants are motivated to continue to disseminate their libelous statements to further their scheme to extort Five Million Dollars.

37. Defendant's false, derogatory and defamatory statements have caused and will continue to cause irreparable harm to Plaintiff's reputation in the community and interfere with Plaintiff's career and business.

38. Without an injunction Plaintiff will have no other adequate remedy at law to mitigate or stop these damages from occurring.

39. Plaintiff's substantial likelihood of success on the merits is evident as the defamatory remarks made by Defendants are false and without basis.

40. Plaintiff's threatened injury to his reputation outweigh any possible harm to the Defendants who only stand to sell more stories or get hush money, and further solidify the ill will of the community against Plaintiff.

41. Because the false statements made by Defendant are false and without basis and made only with the intent to ruin Plaintiff's character and business reputation in the community, the granting of the preliminary injunction will not disserve the public interest.

**WHEREFORE**, Plaintiff demands the entry of a preliminary injunction against the Defendants, as well as a judgment against Defendants for all damages allowed by law, including attorney's fees and costs, and for any further relief this Court deems just and proper.

## COUNT III
### (Defamation Against Poleo)

Plaintiff sues Defendants, POLEO, and alleges as follows:

42. Plaintiff re-alleges the allegations of paragraphs 1 through 30, as if fully set forth herein.

43. POLEO made written false, derogatory and defamatory allegations published in the Doral News online version and in her Twitter account.

44. POLEO's stories state unverified facts that POLEO makes the reader believe are true about Plaintiff's family ties with high ranking political figures in Venezuela, and also makes unverified statements accusing Plaintiff of criminal acts and of being a "bag man" to political figures in Venezuela, namely Diosdado Cabello Rondon.

45. Additionally, POLEO makes false statements that Plaintiff is currently under investigation by authorities in Washington, that his "fortune" and business success may be derived from illegal acts and that he possesses a bank account with "close to" 500 million U.S. Dollars.

46. POLEO made these remarks with the intent to discredit and defame Plaintiff both in Venezuela and in the Southern District of Florida.

47. As a result of POLEO's writing the defamatory remarks about Plaintiff, Plaintiff's reputation has been affected among his business partners, associates and social peers.

48. As a direct and foreseeable consequence of POLEO's actions, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands the entry of a judgment against Defendant for all damages allowed by law, including attorney's fees and costs, and for any further relief this Court deems just and proper.

## COUNT IV
### (Defamation Against Doral News)

Plaintiff sues Defendant, DORAL NEWSPAPER, and alleges as follows:

49. Plaintiff re-alleges the allegations of paragraphs 1 through 30, as if fully set forth herein.

50. Doral News made written false, derogatory and defamatory allegations, and statements in the form publication on their news print and online newspaper to third parties regarding the integrity, reputation, honesty and overall character of Rondon.

51. At the time, Defendant, Doral News, published the defamatory stories, Doral News knew, should have known, or were negligent in not knowing that each of the defamatory statements about Rondon's alleged involvement in criminal activity was false.

52. Doral News falsely accuses Rondon of actions and conduct which constitute a criminal activity and/or infer that Rondon is a criminal, and are therefore libelous *per se*.

53. Defendants' distribution of these written false, derogatory and defamatory allegations have subjected Plaintiff to distrust, hatred, contempt, ridicule and obloquy among business partners, associates and the public in general.

54. At the time, Doral News published the stories/statements, this had actual knowledge of the wrongfulness of their conduct and the high probability that injury or damage to Plaintiff would be a result.

55. Defendants made those false, derogatory and defamatory allegations, accusations and statements with the intent to damage Rondon's personal and professional reputation.

56. As a result of DORAL NEWSPAPER' writing the defamatory remarks about Plaintiff, Plaintiff's reputation has been affected among his business partners, associates and social peers.

57. As a direct and foreseeable consequence of DORAL NEWSPAPER' actions, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands the entry of a judgment against Defendant for all damages allowed by law, including attorney's fees and costs, and for any further relief this Court deems just and proper.

## COUNT V
### (Defamation Against Leon)

Plaintiff sues Defendant, LEON, and alleges as follows:

58. Plaintiff re-alleges the allegations of paragraphs 1 through 30, as if fully set forth herein.

59. The Leon Defamatory Story stated that Rondon is a "Partner" of Miguel Eduardo Rodriguez Torres.

60. The Leon Defamatory Story states that "many people confirm" Rondon's role in managing an "immense fortune" belonging to Diosdado Cabello Rondon, President of the National Assembly of Venezuela.

61. In a similar fashion, the Leon Defamatory Story further states "for sure" "confirmed" sources in Washington – have been investigating the origins of Rondon's monies/wealth and money transactions in the United States.

62. The Leon Defamatory Story goes into great detail regarding Torres and his alleged participation in the deaths of forty Venezuelan citizens. Defendant, Leon intentionally misguided the public into believing that Rondon was involved or cohorts with a government official, who has committed crimes against Venezuelan citizens and/or human rights violations.

63. Leon's Defamatory Story focuses on a transaction involving the sale of school buses to a public university. Leon imputes that Torres was involved in the school bus transaction and eludes to nebulous relationship between the university students, the buses and Torres' repression of the student body, which caused the death of more than forty Venezuelan students/citizens.

64. Leon made these remarks with the intent to discredit and defame Rondon both in Venezuela and in the Southern District of Florida.

65. As a result of Leon's writing the defamatory remarks about Plaintiff Rondon, his reputation has been affected among his business partners, associates and social peers.

66. These disparaging and defaming remarks by Leon were made directly to Rondon's professional reputation and career and with the intention to cause Rondon to be held to hatred, contempt, and causes him to be shunned and avoided by others both by the Venezuelan community in South Florida and in his home country of Venezuela.

67. Defendant made those false, derogatory and defamatory allegations, accusations and statements with the intent to damage Rondon's personal and professional reputation.

68. As a result of LEON's writing the defamatory remarks about Plaintiff, Plaintiff's reputation has been affected among his business partners, associates and social peers.

69. As a direct and foreseeable consequence of LEON's actions, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands the entry of a judgment against Defendant for all damages allowed by law, including attorney's fees and costs, and for any further relief this Court deems just and proper.

Dated: May 13, 2015.

*Respectfully submitted,*

By:  /s/ Julisse Jimenez
*Attorney for Plaintiff*
Florida Bar No. 65387
Email: jj@julissejimenez.com
**Vazquez & Carballo, PA**
200 S. Biscayne Blvd., Suite 4310
Miami FL 33131
Telephone: 305-371-8064
Facsimile: 305-371-4967
Attorneys for Plaintiff